**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**YOLANDA DELIA FAULKS**

**Plaintiff,**

**-against-**

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**

**Defendant.**

**24-cv-08726 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, United States District Judge:**

Yolanda Delia Faulks ("Plaintiff") brings this case against the Commissioner of the Social Security Administration ("Defendant") seeking a reversal, under 42 U.S.C. § 405(g), of the Administrative Law Judge ("ALJ")'s decision denying her claim for Social Security Disability (SSDI). For the reasons stated herein, Plaintiff's motion is **DENIED**.

## LEGAL STANDARD

In a social security disability review action, "[a] disappointed claimant is afforded a three-stage administrative review process beginning with de novo reconsideration by the State of the initial determination. If a claimant is dissatisfied with the state agency's decision on reconsideration, he is entitled to a hearing by an administrative law judge (ALJ) within SSA's Office of Hearings and Appeals. If the ALJ's decision is adverse to the claimant, the claimant may then seek review by the Appeals Council. Proceeding through these three stages exhausts the claimant's administrative remedies... Thereafter, he may seek judicial review in a federal district court…" *Bowen v. New York*, 476 U.S. 467, 471–472 (1986) (internal citations omitted).

Substantively, "in reviewing the denial of SSI benefits, we must determine whether the SSA's decision was supported by substantial evidence and based on the proper legal standard…"

*Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d. Cir. 1998) (internal citations omitted). Substantial evidence has been defined as "more than a mere scintilla… such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotation marks omitted).

"The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citation and internal quotation marks omitted).

## BACKGROUND

### I. Procedural Background

Plaintiff filed the Complaint in this case on November 17, 2024. ECF No. 1. Defendant filed the Social Security Administration Record on January 16, 2025. ECF No. 5. Plaintiff filed a motion for judgment on the pleadings on February 9, 2026. ECF No. 15. Defendant filed their Brief in Opposition on April 1, 2026, seeking to affirm the Commissioner's decision. ECF No. 17.

### II. Factual Background

Plaintiff alleged her disability commenced on January 19, 2021, when she was forty-five years old. At the time, Plaintiff was employed as a correction captain for the City of New York.

AR 215–221. This job required frequent use of her arms and hands for physically restraining incarcerated individuals and lifting. AR 21-23.

**Right shoulder, elbow, and wrist work-related injury**

Following a work-related injury on January 24, 2019, Plaintiff alleges she developed persistent pathology involving the right shoulder, elbow, and wrist. On August 12, 2019, Plaintiff underwent an MRI, which showed a full-thickness tear of the supraspinatus tendon, partial-thickness tearing of the infraspinatus tendon, and an intrasubstance tear of the intra-articular biceps tendon, with associated bursitis and joint effusion. AR 359–360.

On March 18, 2021, Plaintiff underwent right shoulder arthroscopy due to failure of conservative treatment. *Id.* at 258–259; AR 369–369. Post-surgery, Plaintiff experienced reduced right shoulder range of motion with the rotator cuff strength reduced to approximately 4-/5. Plaintiff's right elbow had swelling, tenderness, and a positive Tinel's sign consistent with ulnar neuropathy. Plaintiff's wrist showed decreased grip strength and reduced resistance to flexion and extension. *Id.* at 354, 1140. Treating orthopedist Louis C. Rose, M.D. assessed that Plaintiff was 100 percent temporarily impaired, placed her on no work status, and imposed formal restrictions including no overhead lifting, pushing, or pulling, and avoidance of forceful or repetitive use of the right upper extremity. *Id*. at 354. Even up to and including visits in 2023, Dr. Rose continued with restricted range of motion findings in the right shoulder. Plaintiff was still listed as 100% impaired due to shoulder complaints. *Id.* at 1135–1145.

Plaintiff experiences ongoing pain, weakness, and limited range of motion in her right shoulder despite surgical intervention and physical therapy. She stated that she has difficulty raising her right arm overhead, reaching out in front of her and reaching behind her back. She

testified that these limitations interfere with routine tasks such as dressing, washing her hair, and retrieving items from shelves. *Id.* at 26–29.

With respect to her right hand and wrist, Plaintiff testified that she experiences persistent pain, weakness, and difficulty gripping objects. She drops items, has trouble holding or carrying objects for more than brief periods, and cannot perform repetitive gripping or grasping without increased pain. She testified that writing, typing, and other fine motor activities are limited and cause discomfort when performed for extended periods. *Id.* 31–34.

On May 11, 2022, Dr. Laiping Xie, who examined Plaintiff on behalf of the Social Security Administration, opined that Plaintiff had moderate limitations with lifting, carrying, pulling, pushing, prolonged standing, walking, climbing stairs, and squatting based on the examination. *Id.* at 371–374. On July 14, 2022, Plaintiff underwent right wrist arthroscopy, which confirmed a partial TFCC tear, hypertrophic synovium, and articular cartilage damage. *Id.* at 648–649. Post-operative therapy documented continued pain and weakness, with reduced functional use of the dominant hand. *Id.* at 698–705, 790–865, 1185–1197.

On January 12, 2023, Plaintiff underwent another MRI, showing that the distal infraspinatus tendon was bulbous with tendinosis and fraying with a shallow partial thickness tear involving the distal supraspinatus tenson. *Id.* at 1115–1116. On May 17, 2023, Dr. Sharon Revan opined during a consultative examination that Plaintiff had mild to moderate limitations in gross motor use of the right upper extremity, mild to moderate limitations in standing and walking, and limitations in activities of daily living such as personal grooming due to joint pain. *Id.* at 887–889.

**Ankle injury**

On June 2, 2019, while on vacation, Plaintiff sustained a severe right ankle fracture, requiring emergency hospitalization and open reduction and internal fixation with syndesmotic repair. She remained hospitalized through June 4, 2019. *Id*. at 890–899, 1067. Imaging from November 2020 and March 2022 revealed post traumatic ankle arthritis, tibiotalar joint arthrosis, heterotopic ossification, and bony impingement. *Id.* at 1152, 1172. Foot-and-ankle orthopedic specialist Raymond J. Walls, M.D. evaluated Plaintiff and documented generalized cartilage degeneration inconsistent with a minor injury. *Id.* at 1179, 1182. Plaintiff required steroid injection therapy and bracing and activity modification. *Id.* at 1183.

During the January 12, 2024 hearing in front of the Administrative Law Judge ("ALJ"), Plaintiff testified that she experiences chronic pain, stiffness, and swelling in her right ankle following her fracture and surgical repair. She stated that she has difficulty standing or walking for prolonged periods and must sit down after short intervals due to pain. She testified that she cannot walk long distances, has difficulty climbing stairs, and avoids uneven surfaces due to instability and discomfort. *Id*. at 35–38

**Remainder of Relevant Testimony from Hearing**

Plaintiff testified that despite ongoing treatment, including surgery, physical therapy, medication, and injections, her symptoms have persisted over time. She stated that she does not believe she could perform a job that requires frequent or constant use of her hands or arms, prolonged standing or walking, or sustained physical activity throughout an eight-hour workday. *Id.* at 43–46.

At the administrative hearing, vocational expert Dr. Yakkov Taitz classified Plaintiff's past employment as a correction officer as performed at the medium exertional level. He testified that an individual limited to sedentary work would be unable to perform any of the claimant's

past relevant work. AR 44. He also testified that an individual of Plaintiff's age, education, and work history who could perform a reduced range of light work, with certain postural and manipulative limitations, could perform other work existing in the national economy. *Id*. at 45–47. Dr. Taitz stated that even at the sedentary exertional level, most skilled occupations require bilateral use of the hands and arms on a frequent basis. *Id*. at 50–51. He testified that a limitation, restricting an individual to only occasional use of the dominant upper extremity for reaching, handling, and fingering, would have a significant impact on the occupational base. *Id*. at 51–54.

**ALJ's Findings**

Following the sequential evaluation process at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her January 19, 2021 alleged onset date. *Id*. at 84. The ALJ then found at step two that, since the alleged onset date, Plaintiff had the following severe impairments: "derangement of right shoulder, right elbow and right wrist, status post right ankle fracture with post-traumatic osteoarthritis and obesity." *Id*. The ALJ then determined at step three that Plaintiff's impairments did not, either individually or in combination, meet or equal the criteria of an impairment. Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work, with the following limitations: "[she] can never climb ladders, ropes or scaffolds or reach overhead with the right dominant arm. She can occasionally reach in all other directions and handle with the right dominant arm. [She] can occasionally climb ramps or stairs." *Id*. at 85.

Upon making the RFC determination, the ALJ then found that Plaintiff was unable to perform any of her past relevant work, but substantial work existed in the national economy that a person with Plaintiff's RFC and other vocational factors could perform. *Id.* at 89-90. In support of this determination, the ALJ relied on the January 2024 testimony of the vocational expert. *Id.*

at 42-58, 90. The ALJ found that Plaintiff was not disabled under the Social Security Act. *Id.* at 91.

## DISCUSSION

**There was substantial evidence that Plaintiff was not disabled within the meaning of the Act.**

Plaintiff claims that Defendant erroneously denied her Social Security disability benefits. The Social Security Disability Insurance Program (SSD), established by 42 U.S.C. § 401 et seq., and the Supplemental Security Income Program (SSI), established by 42 U.S.C. § 1381, provide benefits to disabled persons and indigent disabled persons respectively. See *Bowen*, 476 U.S. at 470. "An individual is found to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (internal citations and quotations omitted).

There is a five-step sequential evaluation process governing eligibility for SSD and SSI payments. A claimant must show: (1) they are not engaged in substantial gainful activity; (2) their condition or impairment is severe – "i.e., one that significantly limits his physical or mental ability to do basic work activities"; (3) their "impairments meet or equal those set forth in the 'Listing of Impairments' (listings) contained in subpart P, appendix 1, of the regulations. *Id.* at 470. If the claimant's impairments are not listed, then the claimant must show: (4) their "residual functional capacity" (RFC), which measures the claimant's capacity to engage in basic work activities, does not permit them to perform their prior work; and (5) "in light of [their] RFC, age, education, and work experience, [they do] not have the capacity to perform other work." *Id.*

At step 1, the ALJ and Plaintiff both agree that Plaintiff had not engaged in substantial gainful activity since the January 19, 2021 alleged onset date. ECF 15; ECF 17. At step 2, the ALJ and Plaintiff agree that "Plaintiff had the following severe impairments: "derangement of right shoulder, right elbow and right wrist, status post right ankle fracture with post-traumatic osteoarthritis and obesity". ECF 17 at 2; ECF 15. At step 3, the ALJ determined that Plaintiff's impairments did not, either individually or in combination, meet or equal the criteria of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. ECF 17.

At step 4, the ALJ determined that "despite Plaintiff's impairments, she retained the RFC to perform a range of sedentary work, with…limitations…" ECF 17 at 2. Thus, the ALJ found that Plaintiff was unable to perform any of her past relevant work, saying that Plaintiff had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can never climb ladders, ropes, or scaffolds, or reach overhead with the right dominant arm." ECF 15 at 12. Plaintiff contends that this decision "provides no rational basis for the finding of residual functional capacity of sedentary work within the national economy." *Id.* 20 CFR 404.1567 defines sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." At step 5, the ALJ found that substantial work existed in the national economy that a person with Plaintiff's RFC and other vocational factors could perform. ECF 17.

Defendant contends that the ALJ considered the objective medical evidence and other evidence in accordance with the statutes, and the medical opinions and prior administrative

medical findings ("PAMF") in accordance with the statute to come to the determination that Plaintiff could perform a reduced range of sedentary work. Plaintiff argues that this finding is "fundamentally inconsistent with the objective medical evidence, improperly disregards treating-source functional restrictions, and directly conflicts with the vocational expert's testimony." ECF 15 at 16. Plaintiff states that the vocational expert testified "that limitation to frequent or constant use of only the non-dominant extremity for reaching and handling would preclude all competitive employment." ECF 15 at 15.

It is true that "generally, we give more weight to opinions from your treating sources… If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Clark*, 143 F.3d at 118. However, Plaintiff mischaracterizes the expert's testimony. The vocational expert actually testified that there would be a significant reduction in jobs, not a complete elimination of all available jobs. *See* ECF 17 at 7–8.

Likewise, the ALJ is not required to consider the availability of jobs on the market for the claimant; rather, they are required to consider whether or not the claimant has the capacity to perform other work. *See Bowen*, 476 U.S. at 470 (outlining the requirements for claimants to show eligibility for SSD and SSI payments). Dr. Taitz stated that even at the sedentary exertional level, most, *but not all*, skilled occupations require bilateral use of the hands and arms on a frequent basis. AR 50–51. Plaintiff's medical history shows she had mild to moderate limitations in gross motor use of the right upper extremity, mild to moderate limitations in standing and walking, and limitations in activities of daily living such as personal grooming due to joint pain. *Id*. at 887–889. Although Plaintiff was once assessed to be 100% impaired and was put on a no

work status with formal restrictions, Plaintiff has been in therapy and, as stated, the recent consultation shows only mild to moderate limitation. *Id.* Because Plaintiff had the capacity to perform other work, there was substantial evidence for the ALJ to find that she satisfied Step 5 of the evaluation process, and thus cannot obtain benefits from SSD and SSI.

**CONCLUSION**

For the reasons outlined above, Plaintiff's Motion is **DENIED**. The Clerk of this Court is respectfully directed to terminate the pending motion at ECF No. 15.

**SO ORDERED.**

**Dated:** **August 3, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**